**FEDERAL TRADE COMMISSION, et al., Plaintiffs**

v.

**WATSON PHARMACEUTICALS, INC., et al., Defendants.**

**Meijer, Inc., et al., Plaintiffs**

v.

**Unimed Pharmaceuticals, Inc., et al., Defendants.**

**Louisiana Wholesale Drug Co., Inc., et al., Plaintiffs**

v.

**Unimed Pharmaceuticals, Inc., et al., Defendants.**

**Rochester Drug Cooperative., Inc., et al., Plaintiffs**

v.

**Unimed Pharmaceuticals, Inc., et al., Defendants.**

Nos. 2:09–CV–00598 MRP (PLA), 5:09–CV–00215 MRP (PLA), 5:09–CV–00228 MRP (PLA), 5:09–CV–00226 MRP (PLA).

United States District Court, C.D. California.

April 8, 2009.

J. Robert Robertson, Meredyth Smith Andrus, Federal Trade Commission, David Balto, Law Offices of Daivd Balto, Washington, DC, John D. Jacobs, Federal Trade Commission, Barbara M. Motz, Cheryl L. Johnson, Office of Attorney General of California, Lori S. Brody, Kaplan Fox & Kilsheimer LLP, Los Angeles, CA, Donald L. Perelman, Roberta Liebenberg, Fine Kaplan & Black RPC, David Francis Sorensen, David F. Sorenson, Eric L. Cramer, Peter R. Kohn, Berger & Montague PC, Philadelphia, PA, John D. Radice, Linda P. Nussbaum, Kaplan Fox & Kilsheimer LLP, Barry S. Taus, Bruce E. Gerstein, Kevin S. Landau, Garwin Gerstein and Fisher LLP, New York, NY, Laurence D. King, Linda M. Fong, Kaplan Fox & Kilsheimer LLP, Joshua Paul Davis, Law Offices of Joshua P. Davis, San Francisco, CA, Adam M. Moskowitz, Kozyak Tropin Throckmorton, Miami, FL, Chris Letter, John Gregory Odom, Stuart E. Des Roches, Odom & Des Roches LLP, New Orleans, LA, David C. Raphael, Jr., David P. Smith, Susan C. Segura, W. Ross Foote,

The Smith Foote Law Firm LLP, Alexandria, LA, Russell A. Chorush, Heim Payne & Chorush LLP, Houston, TX, for Plaintiffs.

Douglas B. Adler, Julia K. York, Skadden Arps Slate Meagher & Flom LLP, Matthew P. Lewis, Thomas J. Benedict, White & Case LLP, Ronald C. Redcay, Teri R. Richardson, Kelly A. Welchans, Arnold and Porter, Los Angeles, CA, Steven C. Sunshine, Skadden Arps Slate Meagher and Flom LLP, Eric Grannon, J. Mark Gidley, White & Case LLP, Christopher J. Kelly, John Roberti, Mark William Ryan, Mayer Brown LLP, Washington, DC, for Defendants.

## ORDER TRANSFERRING CASES

MARIANA R. PFAELZER, District Judge.

The Federal Trade Commission and the State of California ex rel. Attorney General Edmund G. Brown, Jr. brought an antitrust and unfair competition action against pharmaceutical companies Watson Pharmaceuticals, Par Pharmaceuticals Companies, Inc., Paddock Laboratories, Inc., and Solvay Pharmaceuticals, Inc. (collectively, "Government Defendants") in this district arising out of settlement agreements they entered into in the Northern District of Georgia.

The following week, private party plaintiffs, Meijer, Inc. and Meijer Distribution, Inc. (together, "Meijer"), Louisiana Wholesale Drug Co., Inc., ("Louisiana"), and Rochester Drug Co–Operative, Inc. ("Rochester") (collectively, "Private Plaintiffs"), brought follow-on class action complaints against Unimed Pharmaceuticals, Inc.,[1] Solvay Pharmaceuticals, Inc., Watson Pharmaceuticals, Par Pharmaceuticals Companies, Inc., and Paddock Laboratories, Inc. (collectively, "Private Defendants"), also in the Central District of California.

Both Government and Private Defendants move to transfer venue to the Northern District of Georgia. For the reasons set forth below, the motions are granted.

## I. BACKGROUND

Androgel is the brand name of a drug to treat low testosterone developed by Laboratoires Besins Iscovesco ("Besins") and Unimed Pharmaceuticals, L.L.C. ("Unimed"), now a subsidiary of Solvay Pharmaceuticals, Inc. ("Solvay"). Decl. of John Roberti in Supp. of Defs.' Joint Mot. to Transfer Venue ("Roberti Decl.") at ¶ 4.[2] The Food and Drug Administration ("FDA") approved Androgel on February 28, 2000. Unimed and Besins then filed for patent protection on August 30, 2000, obtained U.S. Patent No. 6,503,894 on January 7, 2003, and listed it in the FDA's Orange Book. *Id.* at Ex. C, G.

In May 2003 defendants Watson Pharmaceuticals ("Watson") and Paddock Laboratories, Inc. ("Paddock") each filed Abbreviated New Drug Applications ("ANDAs") for generic drug approvals listing Androgel as the reference drug. *Id.* at ¶ 5. In August 2003, Unimed and Besins sued Watson and Paddock (independently) for patent infringement in the U.S. District Court in the Northern District of Georgia.[3] *Id.* at ¶ 6. Both suits

---

1. This defendant states that its correct name is Unimed Pharmaceuticals, L.L.C.

2. Unless otherwise noted, all citations to court documents refer to the suit brought by the FTC and the State of California ("the Government suit"). The substantive arguments are discussed with respect to the Government suit.

3. The two suits are *Unimed Pharm et al. v. Watson Pharm.*, No. 1:03–cv–02501–TWT, 2003 WL 23824320 (N.D.Ga. filed Aug. 21, 2003), and *Unimed Pharm., et al. v. Paddock Labs.* No. 1:03–cv–02503–TWT, 2003 WL 23824320 (N.D.Ga. filed Aug. 21, 2003), collectively, "the Georgia suits."

were presided over by Judge Thomas W. Thrash, Jr. for three years. *Id.* After discovery, the filing of claim construction briefs, and motions for partial summary judgment, both cases were settled, with agreements that allowed the defendants to introduce generic products into the market in 2015, five years before expiration of the patent. *Id.* at ¶ 5, 7, 8. Defs.' Mot. at 9.

Unimed and Besins' settlement agreement with Watson was executed September 13, 2006. *Id.* at ¶ 12. Under the Stipulation of Dismissal, the Georgia court retained jurisdiction to enforce the settlement. *Id.* at Ex. B. Unimed and Watson also entered into a co-promotion agreement. *Id.* at ¶ 14.

Paddock's settlement agreement with Unimed was executed September 13, 2006. *Id.* at ¶ 12. Judge Thrash entered a Consent Judgment and Order of Permanent Injunction between Unimed, its parent Solvay, Besins, Paddock, and its assignee Par Pharmaceuticals Companies, Inc. ("Par"). *Id.* at Ex. A. In addition, Solvay and Par entered into a co-promotion agreement. *Id.* at ¶ 15. Solvay and Paddock also entered into a back-up manufacturing and supply agreement. *Id.*

The financial terms of the agreements were not filed with the Georgia Court. Tr. of Mot. to Transfer Hr'g at 10–11.

On September 25, 2006, Solvay filed both settlement agreements, both co-promotion agreements, and the manufacturing and supply agreement with the Federal Trade Commission ("FTC"), as required under § 1112(a) of the Medicare Prescription Drug and Improvement Act. *Id.* at 16. The FTC conducted a two-year investigation, which included reviewing documents and taking witness testimony in hearings. *Id.* at ¶¶ 17–27.

The FTC and the State of California filed this suit in the Central District of California on January 27, 2009 ("the Government suit"). The Government alleges that the settlement agreements in the Georgia suits harmed competition by having the brand-name and generic pharmaceutical companies agree not to compete and instead share monopoly profits. *See e.g.*, First Am. Compl. (bringing complaints under Section 1 of the Sherman Act, 15 U.S.C. § 1; unfair method of competition under Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); Section 2 of the Sherman Act, 15 U.S.C. § 2; and violations of the Cartwright Act, Cal. Bus. & Prof.Code §§ 16700 *et seq.*, 17200 *et seq.*).

Meijer filed suit in the Central District of California on February 2, 2009, and Louisiana and Rochester each filed suit the following day. Similar to the Government suit, Private Plaintiffs allege that the settlement agreements in the Georgia suits harmed competition by having the brand-name and generic pharmaceutical companies agree not to compete, thereby preventing or delaying generic competition and allowing the generic companies to instead share monopoly profits. *See, e.g.*, Meijer Class Action Compl. (bringing claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2). In contrast to Government Plaintiffs, Private Plaintiffs do not bring state law claims.

All defendants now move to transfer venue to the Northern District of Georgia.

## II. LEGAL STANDARD

Venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C § 1391(a)(2). If venue is improper, the case shall be dismissed or transferred "to any district or division in which it could have been brought," if transfer serves "the interest of justice." 28 U.S.C. § 1406(a).

The Court has discretion to transfer to a more convenient forum where transfer

serves the interest of justice. 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

In exercising this discretion, various factors have been approved by the Ninth Circuit, such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiffs choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir.2000). In addition, the "relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing." *Id.* at 499.

 The party seeking transfer for convenience under § 1404(a) generally bears the burden to show that another forum is more convenient and serves the interest of justice. *Id.* at 499. The inquiry is not whether one venue or another would be the best venue; but rather whether there is a venue that is more convenient.

## III. DISCUSSION

 The threshold inquiry here is whether the plaintiffs could have brought these cases in the Northern District of Georgia. The parties can not reasonably dispute that venue would have been proper in the Northern District of Georgia because the events that gave rise to the claims were agreements stemming from the settlement of two patent suits in that district. It is clear that these actions could have been brought in the Northern District of Georgia for purposes of 28 U.S.C. § 1404(a).

Turning to the inquiries of convenience and fairness, all parties argue that their forum choice is the more appropriate choice. The FTC argues that defendant Watson is headquartered in the Central District of California, significant events took place in the district, and evidence is located in the district. Private Plaintiffs make similar arguments. The State of California contends that due process and its lack of personal jurisdiction in Georgia make transfer inappropriate. All defendants argue that the Northern District of Georgia is the most appropriate forum because the events giving rise to the suit and the evidence are in Georgia, transfer is necessary to avoid subjecting them to inconsistent district court judgments, and transfer will conserve judicial resources.

### A. Forum shopping

Both the FTC and Defendants discuss the FTC's choice of forum with respect to forum shopping. *See, e.g.,* Defs.' Joint Mot. to Transfer Venue ("Defs.' Mot.") at 18–21, Ptf. FTC's Opp. to Defs.' Joint Mot. to Transfer Venue ("FTC Opp.") at 13–15. Defendants suggest that the FTC seeks to not only to avoid Eleventh Circuit law, but create a circuit split. Defs.' Mot. at 19–20. FTC replies that "a federal agency's choice to re-litigate 'legal questions of substantial public importance' in other forums should neither be discouraged nor condemned." FTC Opp. at 13 (citing *U.S. v. Mendoza,* 464 U.S. 154, 160, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984)).

On the question of whether or not a challenge to a patent settlement and associated agreements on the grounds that

they are anticompetitive and actionable as an antitrust violation, the circuit law that the FTC seeks to develop, according to the FTC, or avoid, according to Defendants, is set forth in *Schering–Plough,* which the Eleventh Circuit found "fell well within the protections of the [ ] patent and were therefore not illegal." *Schering–Plough v. FTC,* 402 F.3d 1056, 1076 (11th Cir.2005).

The FTC points out that if it were forum shopping to seek the most favorable circuit law, it would have filed in the Sixth Circuit, to take advantage of the decision in *In re Cardizem,* and not the Ninth Circuit, which has not previously ruled on such a case. FTC Opp. at 15 (citing *In re Cardizem CD Antitrust Litig.,* 332 F.3d 896 (6th Cir.2003)).

Whatever the FTC's motivation, the Court agrees that condemnation of the FTC's choice of filing suit in the Central District of California as forum shopping is inappropriate. In the context of conflicting circuit law on statutory construction, the Ninth Circuit has recognized that "[t]he courts do not require an agency of the United States to accept an adverse determination ... by any of the Circuit Courts of Appeals as binding on the agency for all similar cases throughout the United States" and "[i]t is standard practice for an agency to litigate the same issue in more than one circuit" where the circuit has not yet developed precedent. *U.S. v. AMC Entertainment, Inc.,* 549 F.3d 760, 771–72 (9th Cir.2008) (citing *Railway Labor Executives' Ass'n v. I.C.C.,* 784 F.2d 959 (9th Cir.1986), internal quotations omitted).

However, the FTC has been criticized for "rather openly shopping for a circuit split on the issue of reverse-payment Hatch–Waxman settlements" in two cases that were "essentially the same" and involved a single defendant. *FTC v. Cephalon, Inc.,* 551 F.Supp.2d 21, 30 (D.D.C. 2008) (footnote omitted). Here too, the FTC's desire to create a circuit split for strategic reasons bears little weight on the determination of transfer in the interest of justice and convenience of the parties and witnesses.

### B. The Georgia suits

The events giving rise to the antitrust claims in this suit are the settlement and attendant agreements of the Georgia suits.

The FTC takes the position that Defendants' prior patent litigation does not favor transfer. It states that the Court can assess whether or not Defendants' agreements are antitrust violations without "directly assessing the likely outcome of the underlying patent litigation" under the theory that the agreements are a per se restraint of trade. FTC Opp. at 19. In making this argument, the FTC would rely on a Sixth Circuit holding where a reverse payment patent settlement agreement was held to be a horizontal agreement to eliminate competition for a drug, "a classic example of a *per se* illegal restraint of trade." *In re Cardizem CD Antitrust Litig.,* 332 F.3d 896, 908 (6th Cir.2003).

The FTC recognizes that the *Cardizem* per se restraint of trade holding has not been universally adopted.[4] Recently, the Federal Circuit has applied a rule of rea-

---

4. In *In re Schering–Plough,* the FTC stated "The current trend of authority seems to be moving in another direction, however. The even more recent decisions in *Valley Drug Co. v. Geneva Pharmaceuticals Inc.,* 344 F.3d 1294 (11th Cir.2003) (reversing the district court), and in the *Ciprofloxacin Hydrochloride* *Antitrust Litigation,* 261 F.Supp.2d 188 (E.D.N.Y.2003), expressly considered contrary authority and declined to apply the per se label. *See also In re Tamoxifen Citrate Antitrust Litig.,* 262 F.Supp.2d 17 (E.D.N.Y. 2003)." *In re Schering–Plough Corp.,* 136 F.T.C. 956, 972(26) (footnote omitted).

son analysis in a reverse payment case. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323 (Fed.Cir. 2008), hereinafter *"Cipro."* In *Cipro,* the Federal Circuit considered whether there was a violation of antitrust law when an ANDA litigation was settled with a large reverse payment from a patent holder to a generic manufacturer.[5] The case attracted considerable attention, and the Court considered the views of the Solicitor General and received briefs from amici FTC, the State of California, a group of law professors, the Generic Pharmaceuticals Association, among others, summarizing recent cases in different circuits.

█ The FTC still takes the position under the per se theory that "these [reverse payment] agreements are flat out illegal," but admitted in the hearing before this Court that it could not litigate this case without also including a theory of competitive harm that would necessitate looking to the merits of the patent cases. Tr. of Mot. to Transfer Hr'g at 35–39.

It is clear that the merits of the underlying patent cases must be examined to some extent to make an antirust determination in this case under a rule of reason analysis. The FTC and State of California demonstrate this point in the monopolization claim, asserting that both Watson and Par/Paddock "would have prevailed in the patent litigation and marketed generic AndroGel well before 2015" to support their claim that "Solvay has unlawfully extended its monopoly not on the strength of its patent, but rather by compensating its potential competitors." First Am. Compl. at ¶ 93–94, 112. They allege, among other things, that during the course of the Georgia suits, substantial evidence of non-infringement, invalidity, and unenforceability was obtained. First Am. Compl. at ¶ 86–89, 93–96.

The FTC has indicated that at least some of their claims will predicated on the theory that had the Georgia suits been litigated, the patent would have been found non-infringed, invalid, and unenforceable, and that a generic form of Androgel would have been marketed earlier. Therefore, there is no way to litigate this case without re-opening an inquiry into the merits of the Georgia suits, and some evaluation of the validity of the patent will necessarily be involved.

Judge Thrash in the Northern District of Georgia, having presided over the two Georgia suits for three years, is familiar with the details of the underlying patent litigation, and afterwards ruled on motions in connection with the FTC investigation. Defs.' Mot. at 16.

Although the FTC points out that Judge Thrash did not enter any substantive rulings in the case, to assert that there would be "little to no judicial economy in transfer" goes too far. FTC Opp. at 20. Judge Thrash is familiar with the underlying facts of the patent suits, having reviewed motions for partial summary judgment, claim construction briefs, and other motions and papers during the suits' pendency. Defs.' Joint Reply in Supp. of Defs.' Joint Mot. to Transfer venue to the Northern District of Georgia ("Defs.' Reply") at 5–6. The Defendants have shown Judge Thrash would likely have this case assigned to him if it were transferred to the Northern District of Georgia. *Id.* at 7 (citing Local Rule 16.2.1 which requires the filing of a listing of any previously adjudicated related cases in a Joint Preliminary Report and Discovery Plan within thirty days of the appearance of the first defendant). Transfer would conserve judicial resources.

---

5. In *Cipro,* as in this case, the 180-day marketing exclusivity period was not implicated.

■ Additionally, Defendants argue that an adverse judgment from this Court in this antitrust case could subject them to conflicting district court judgments: having to both comply with and be enjoined from complying with the settlement agreements stipulated to in Judge Thrash's Consent Judgment and Order and Stipulation and Dismissal. Defs' Joint Mot. at 13. The FTC disagrees, pointing out that the both the Par/Paddock and Watson agreements automatically terminate if there is a final, non-appealable order from a competent United States court declaring the agreement to be illegal or unenforceable, and providing hypothetical remedies that would not conflict with Judge Thrash's order. FTC Opp. at 21–23, Decl. of Meredyth Smith Andrus in Supp. of Ptf. FTC's Opp. to Defs.' Opp. to Defs.' Joint Mot. to Transfer at Ex. AA, BB.

Because of the close ties between this antitrust case and the underlying patent cases, the judge in the Northern District of Georgia is more appropriate to hear this case. Judge Thrash has retained jurisdiction and can modify his own orders, alleviating any risk of conflicting judgments, and obviating the need to speculate on remedies at his early stage. In addition, the Defendants have stated that if a judgment finding the agreements unenforceable, they would resume the patent litigations. Defs.' Reply at 9.

### C. The § 1404(a) factors

Turning now to the other considerations under § 1404(a), all plaintiffs and defendants argue that their preferred venue is more convenient and in the interest in justice.

■ The relevant agreements, i.e., the settlements and attendant agreements, were negotiated and executed in Georgia (with the exception of one negotiation in Texas) and settled litigations in the Northern District of Georgia. Roberti Decl. at

¶¶ 7–9. The most important operative facts occurred in Georgia, the central and most compelling factor in this particular case. *See supra* § B.

Some factors do favor one venue more than another. Both courts are familiar with the governing law. Both courts have similar caseloads and can handle this litigation promptly. The burden on the witnesses to travel to California versus Georgia is not vastly different, and the costs of litigation in the two forums will be similar, if not less expensive in the Northern District of Georgia because Judge Thrash is already familiar with the underlying patent litigation. While the parties disagree as to where defendant Watson has its headquarters, i.e., in Corona, California or Morristown, New Jersey, it is not disputed that defendant Solvay has its principal place of business in Marietta, Georgia. Other defendants are not in either district. Sources of evidence are perhaps more likely to be obtained in Georgia than in California, but will surely be in other places as well.

■ Plaintiffs' choice of forum, while taken into account, is not a sufficiently strong factor to deny the motion to transfer.

### D. California's opposition to transfer

The State of California opposes the Motion to Transfer for two reasons. It argues (1) due process concerns on the basis that it does not have the requisite minimum contacts with Georgia, and (2) that the State of California is not subject to personal jurisdiction in the Northern District of Georgia. Opp. of the State of California to Definitions.' Joint Mot. to Transfer Venue to the Northern District of Georgia based on a Lack of Personal Jurisdiction ("Cal. Opp.") at 1. These arguments are without merit. The State does not assert that the transferee forum does

not have subject matter jurisdiction, which would preclude transfer.

 For transfer under § 1404(a), the threshold issue is whether the case "might have been brought" in the proposed venue. However, the inquiry into due process asks if the transferee court has jurisdiction over the *defendants,* not the *plaintiffs.* *See* Charles Alan Wright et al., Federal Practice and Procedure § 3845 (3d. ed.2007) ("a case cannot be transferred to a district in which the defendant is not subject to service of process, and where, therefore, in personam jurisdiction cannot be obtained over the defendant."). The State of California is a plaintiff here, so whether or not it is subject to service of process in Georgia is not a factor. The State might have brought this case in Georgia.

 Similarly, there is no need to enter into an analysis of minimum contacts between the State of California and Georgia, because it is not necessary for the transferee forum to have personal jurisdiction over the plaintiff. *See, e.g., Murray v. Scott,* 176 F.Supp.2d 1249, 1255 (M.D.Ala. 2001) ("There is also no merit to [plaintiff's] line of argument, that this court must have personal jurisdiction over him for the transfer to be proper .... there is no due-process concern, at least to the level of requiring minimum contacts with the new forum, for plaintiff when a case is transferred under § 1404(a).").

### E. Private Plaintiffs

 Unlike the Government, Private Plaintiffs did not bring any claims under California state law. In addition, Private Defendants point out that Meijer is not a California company and has no contacts with California. None of the Private Plaintiffs are licensed to do business in California. Private Plaintiffs argue that they are bringing suit on behalf of nationwide classes, however, no classes have been certified yet. None of these facts support Private Plaintiffs' position that the cases should not be transferred.

### F. Summary

The Court, having weighed the factors discussed above, finds that the Northern District of Georgia, where the underlying patent suits were litigated and settled, is a more convenient forum for these suits because, among other compelling reasons, the merits of the patent suits will necessarily be at issue in these suits.

## IV. CONCLUSION

Defendants' Joint Motions to Transfer Venue to the Northern District of Georgia are GRANTED.

IT IS SO ORDERED.