**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROSHIPLINE INC; EP-TEAM INC.,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

ASPEN INFRASTRUCTURES LTD,
formerly known as Suzlon
Infrastructure Ltd; SUZLON
INFRASTURCKTURE LTD,
　　　　　*Defendants-Appellees.*

No. 08-35337

D.C. No.
3:07-cv-05660-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Argued and Submitted
December 7, 2009—Seattle, Washington

Filed February 3, 2010

Before: Robert R. Beezer, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Beezer;
Partial Concurrence and Partial Dissent by Judge Tallman

2021

---

**COUNSEL**

Steven V. Gibbons, Gibbons & Associates, P.S., Seattle, Washington, for the plaintiffs-appellants.

Robert J. Bocko, Keesal, Young & Logan, Seattle, Washington, for the defendant-appellee.

---

**OPINION**

BEEZER, Circuit Judge:

Plaintiffs-appellants ProShipLine, Inc. and EP-Team, Inc. appeal from two district court decisions in favor of defendant-appellee Aspen Infrastructures Ltd. Both decisions involve a writ of maritime attachment that ProShipLine and EP-Team

obtained against Aspen pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure ("Rule B"). The district court held in the first decision that it could not compel Aspen to post security in lieu of garnishment. This decision forced ProShipLine and EP-Team to either waive their right to garnish Aspen's property pursuant to a previously obtained Rule B writ or to garnish the property despite alleged impracticability. The district court, in the second decision, equitably vacated ProShipLine's and EP-Team's Rule B writ and exonerated security posted for that writ. The district court further ordered ProShipLine and EP-Team to reimburse Aspen for the value of the property they seized in accord with that writ.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We hold that although the district court's first decision was proper, the district court abused its discretion in the second decision. Equitable vacatur should not have been applied against EP-Team individually.

## I

The litigants' legal relationship formally began on April 9, 2006, when EP-Team[1] and Aspen[2] entered into the Sales and Logistics Services Agreement. Under the Agreement, ProShipLine,[3] as EP-Team's designated agent and assignee, agreed

---

[1]EP-Team is incorporated in Delaware. EP-Team is a consulting and management enterprise that works with companies across a variety of business sectors.

[2]At the time of contracting, Aspen, a closely-held enterprise incorporated in India, did business under the name of Suzlon Infrastructure Ltd. Over the past several years, Suzlon Infrastructure Ltd. changed its name to Aspen Infrastructures Ltd., had its name revert back to Suzlon Infrastructure Ltd. and changed its name again to Synefra Engineering & Construction Ltd. In the interest of simplicity, we refer to this enterprise as "Aspen" regardless of its actual name at different points in time.

[3]ProShipLine is incorporated in Nevada and serves as a contract carrier for various types of cargo.

to act as Aspen's general sales and port services agent. ProShipLine and EP-Team solicited cargo for return trips to India and handled port and terminal operations for Aspen throughout America.[4]

The parties' Agreement contains a forum selection clause that says, in the case of a dispute between the parties, arbitration should take place in Singapore. The Agreement also includes a choice-of-law clause providing that, in such a dispute, the Agreement should be construed and enforced in accord with English law. ProShipLine's, EP-Team's and Aspen's contractual relationship remained in good standing for more than a year.

ProShipLine's, EP-Team's and Aspen's relationship became strained in the summer of 2007. Each side blames the other for breaching the Agreement.[5] We do not examine the merit of these contentions. We observe only that the conflict resulted in the parties terminating their business relationship on or about August 1, 2007. The end of the business relationship marked the onset of extensive litigation in Texas, New York and Washington.

## A

On August 6, 2007, ProShipLine and EP-Team filed suit against Aspen in the Southern District of Texas (the "First Texas Action"). *EP-Team, Inc. v. Aspen Infrastructure, Ltd.*,

---

[4]Aspen charters vessels to transport wind turbine generator components from India to other countries, including the United States. In an effort to avoid vessels returning to India empty handed, Aspen entered the contract carriage business to obtain cargo for its return trips to India.

[5]ProShipLine and EP-Team allege that Aspen sought to involve them in multiple transactions that ProShipLine and EP-Team believed were illegal. Aspen alleges that it had grown dissatisfied with ProShipLine's and EP-Team's performance, especially regarding bookkeeping and the handling of a bank account operated by ProShipLine and EP-Team on behalf of Aspen.

No. 4:07 Civ. 2549 (S.D. Tex. Aug. 8, 2007). ProShipLine and EP-Team sought declaratory relief regarding the construction and enforcement of the Agreement and to compel arbitration. Aspen then moved to stay the case pending resolution of the parties' disputes through arbitration in Singapore. On December 5, 2007, the Texas District Court granted Aspen's motion and administratively closed the First Texas Action. The court expressly left open the option to reinstate the case following the conclusion of the arbitration proceedings.

On December 7, 2007, ProShipLine and EP-Team initiated a second action against Aspen in the Southern District of Texas (the "Second Texas Action"). *ProShipLine, Inc. v. M/V Beluga Revolution*, No. H-07-4170, 2007 WL 5397377, at *1 (S.D. Tex. Dec. 7, 2007). In that action, ProShipLine and EP-Team sought an order and writ of maritime attachment pursuant to Rule B. The district court issued the writ on December 10, 2007. Aspen immediately moved to vacate the writ. After conducting an evidentiary hearing on December 14, 2007, the district court granted Aspen's motion and vacated the writ.[6] *ProShipLine, Inc. v. M/V Beluga Revolution*, No. H-07-4170, 2007 WL 4481101, at *1 (S.D. Tex. Dec. 18, 2007).

**B**

Similar legal proceedings took place in New York. On October 12, 2007, Aspen brought suit against EP-Team individually in the Southern District of New York (the "First New York Action"). *Aspen Infrastructures, Ltd. v. E.P. Team, Inc.*, No. 07 Civ. 8813 (RWS), 2008 WL 2963491 (S.D.N.Y. Aug. 1, 2008). Aspen alleged admiralty jurisdiction and sought an

---

[6]The district court concluded that the writ had been improperly issued because ProShipLine and EP-Team had failed to sufficiently show that Aspen could not be "found" within the district, a requirement of Rule B. *ProShipLine, Inc. v. M/V Beluga Revolution*, 2007 WL 4481101, at *2-*3 (S.D. Tex. Dec. 18, 2007).

order and writ of maritime attachment pursuant to Rule B. The district court ordered the issuance of the writ. Pursuant to that writ, Aspen successfully seized funds belonging to EP-Team.[7]

On December 3, 2007, ProShipLine independently filed a separate action against Aspen in the Southern District of New York (the "Second New York Action"). *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 533 F. Supp. 2d 422, 425 (S.D.N.Y. 2008). ProShipLine sought an order and writ of maritime attachment pursuant to Rule B. The district court issued the writ, and ProShipLine garnished Aspen and seized approximately $2 million from Aspen's bank accounts. On January 16, 2008, Aspen moved to vacate the district court's order in the Second New York Action. The district court ruled in favor of Aspen on February 1, 2008, and vacated the writ.[8] ProShipLine appealed the district court's grant of this motion to the Second Circuit, which affirmed the district court. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 110 (2d Cir. 2009) (affirming "solely on the ground that the district court did not err in concluding that [ProShipLine and Aspen] were both present in the Southern District of Texas").

---

[7]EP-Team moved, unsuccessfully, to vacate this writ. The district court concluded that EP-Team had been unable to show that it was "found" in the same district as Aspen, and therefore the writ was properly issued. *Aspen Infrastructures, Ltd. v. E.P. Team, Inc.*, 2008 WL 2963491, at *1 (S.D.N.Y. Aug. 1, 2008).

[8]The district court granted Aspen's motion because it concluded that the Agreement did not give rise to admiralty jurisdiction, that Aspen and ProShipLine were both present in the Southern District of Texas and that ProShipLine had abused the ex parte Rule B process by filing a separate suit against Aspen rather than making a counterclaim in the existing suit. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 533 F. Supp. 2d 422, 427-29 (S.D.N.Y. 2008).

## C

The parties brought their legal struggles to Washington on November 27, 2007, when ProShipLine and EP-Team filed another ancillary Rule B action in the Western District of Washington (the "Washington Action"). *See ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, No. C07-5660FDB, 2008 WL 859753 (W.D. Wash. Mar. 28, 2008). ProShipLine and EP-Team successfully obtained a writ of maritime attachment against Aspen. In light of the district court's order, Aspen posted security pursuant to Supplemental Admiralty and Maritime Claims Rule E(5) ("Rule E(5)") in lieu of allowing ProShipLine and EP-Team to garnish the fuel and lube oil aboard one of Aspen's chartered vessels within the district.

In December of 2007, a second ship chartered by Aspen, the M/V BELUGA FUSION (the "Beluga"), entered the Western District of Washington. ProShipLine and Aspen sought to garnish the fuel and lube oil aboard the Beluga. This time, Aspen declined to provide security to substitute for garnishment of those resources. On December 27, 2007, the district court held an "emergency" hearing. The court rejected ProShipLine's and EP-Team's argument that it could compel Aspen to provide security.[9] Given the choice to either waive their right to garnish the property or take the resources despite alleged impracticability, ProShipLine and EP-Team removed the fuel and lube oil from the Beluga. With the fuel and lube oil in hand (or in container, as the case may be), ProShipLine and EP-Team moved for an order to authorize the sale of the property. On January 30, 2008, the district court issued the order permitting sale of the garnished property. *ProShipLine,*

---

[9]ProShipLine and EP-Team sought security because they alleged that garnishment of the fuel and lube oil aboard the Beluga would be impracticable. Specifically, ProShipLine and EP-Team argued that due to the complexities involved in removing the fuel and lube oil from the Beluga, the cost of removal and storage would exceed the actual value of those resources.

*Inc. v. Aspen Infrastructures, Ltd.*, No. C07-5660FDB, 2008 WL 276497 (W.D. Wash. Jan. 30, 2008). The property was subsequently sold.[10]

On February 12, 2008, Aspen moved to vacate the writ that the district court issued in the Washington Action and to exonerate the security held by ProShipLine and EP-Team pursuant to that writ. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 2008 WL 859753 (W.D. Wash. Mar. 28, 2008). On March 28, 2008, the district court granted Aspen's motion and vacated the writ. The district court also ordered ProShipLine and EP-Team to return the full value of the garnished property.[11] The district court held that equitable vacatur was appropriate because the Agreement did not give rise to admiralty jurisdiction, res judicata applied from the Second New York Action and all of the parties were present within the same district.

ProShipLine and EP-Team moved for reconsideration on the grounds that the district court had allegedly awarded damages to Aspen by ordering ProShipLine and EP-Team to reimburse Aspen. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, No. C07-5660FDB, 2008 WL 1757932 (W.D. Wash. Apr. 17, 2008). The district court denied the motion. The court concluded that the amount that ProShipLine and EP-Team had deposited into the court registry was less than the market value they had agreed upon prior to garnishment.

---

[10]In accord with the sale, ProShipLine and EP-Team deposited an amount equal to the actual sale price of the fuel and lube oil—$64,129.50—into the court registry on March 17, 2008.

[11]Specifically, the district court ordered ProShipLine and EP-Team to pay Aspen an additional $28,092.06, the difference between the amount ProShipLine and EP-Team had deposited into the court registry and the fair market value of the garnished property at the time it was garnished. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, No. C07-5660FDB, 2008 WL 1757932, at *1 (W.D. Wash. Apr. 17, 2008).

## II

We review an order vacating a writ of maritime attachment for abuse of discretion. *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, No. 08-57046, 2010 WL 59212, at *1 (9th Cir. Jan. 11, 2010). We review the legal conclusions supporting such an order de novo. *Id.*

We review de novo a district court's decision that it lacked the legal capacity under the Admiralty Rules to order a party to post security in lieu of garnishment. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002) (noting that conclusions of law are reviewed de novo), *aff'd*, 540 U.S. 644 (2004).

## III

The district court vacated ProShipLine's and EP-Team's writ of maritime attachment because it concluded that there was no valid maritime claim giving rise to admiralty jurisdiction. The district court also held that it was bound by res judicata to vacate the writ. The district court further concluded that attachment was improper because all of the parties were present in the Southern District of Texas. On appeal to this court, Aspen offers a fourth reason that equitable vacatur was proper, arguing that ProShipLine and EP-Team violated 9 U.S.C. § 8 by seeking maritime attachment without diligently pursuing arbitration in Singapore. The district court properly vacated the writ as to ProShipLine. The district court, however, abused its discretion by vacating the writ as it pertains to EP-Team individually.

### A

**[1]** A party may only seek Rule B attachment if the underlying claim satisfies admiralty jurisdiction under 28 U.S.C. § 1333. The Supreme Court explains that a contractual claim gives rise to Section 1333 admiralty jurisdiction when the

underlying contract is "maritime in nature." *Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 26 (2004). To make this determination, we must examine a contract to determine "whether the principal objective of a contract is maritime commerce." *Id.* at 25. In adopting this framework, the Supreme Court rejected the longstanding "spatial approach" to determining the maritime nature of contracts. *Id.* at 24-25. The Court instead held that a "conceptual approach" was needed because modern maritime commerce "is often inseparable from some land-based obligations." *Id.* at 25. The conceptual approach acknowledges this modern reality by examining whether the contract references "maritime service or maritime transactions." *Id.* at 24 (quoting *N. Pac. S.S. Co. v. Hall Brothers Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)).

The district court here did not examine the Agreement as required by *Norfolk Southern Railway Co.* The district court instead applied analysis employed by a few cases in the Southern District of New York. These cases suggest that whether a contract is maritime for the purpose of admiralty jurisdiction hinges upon whether the contract involves specific vessels and specific transactions. *See, e.g.*, *Dolco Invs. v. Moonriver Dev.*, 486 F. Supp. 2d 261, 267-68 (S.D.N.Y. 2007). The district court concluded that the Agreement was not a maritime contract because it did not make "reference to specific vessels or voyages."

**[2]** In so deciding, the district court abused its discretion. *Norfolk Southern Railway Co.* controls and should have been applied by the district court. Under the conceptual test adopted by the Supreme Court, the Agreement manifestly has maritime commerce as its "principal objective." The Agreement begins by stating that Aspen "seeks to utilize the services of [ProShipLine and EP-Team] in support of its efforts to book space on its vessels." ProShipLine's and EP-Team's primary obligations under the Agreement are to "secure freight and associated revenue," obtain "opportunities to add

cargo to specific outbound voyages" and handle all "port and terminal handling operations" including "terminal facilitation, stevedoring, and heavy lift operations." Although many of these obligations are performed on land, there is no question that their sole purpose is to facilitate and make possible Aspen's international maritime operations.

**[3]** Contrary to the district court's conclusion, the Agreement gives rise to federal maritime jurisdiction under 28 U.S.C. § 1333. Our interpretation of the Agreement is in accord with the Second Circuit, which concluded that the Agreement has an "undeniably maritime flavor" under the *Norfolk Southern Railway Co.* conceptual test. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 115 (2d Cir. 2009).

## B

**[4]** Res judicata bars a suit when "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). We have further explained that res judicata applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

The district court abused its discretion by concluding that it was bound by res judicata to vacate the writ to conform with the Southern District of New York's decision to vacate the writ involved in the Second New York Action. We examine four factors to determine whether there is an "identity of claims":

> (1) whether the two suits arise out of *the same transactional nucleus* of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second

action; (3) whether the two suits involve infringe-ment of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (emphasis added). Whether two suits arise out of the "same transactional nucleus" depends upon "whether they are related to the same set of facts and *whether they could conveniently be tried together.*" *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (emphasis added). Reliance on the transactional nucleus element is especially appropriate because the element is "outcome determinative." *Mpoyo*, 430 F.3d at 988; *see also Int'l Union v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir. 1993).

**[5]** Here, the district court's application of res judicata was erroneous because there is no identity of claims. The appeal before us and the Second New York Action do not arise from the same "transactional nucleus." Although both cases involve similar sets of facts, the claim in this suit could not have been tried in the Second New York Action at all, much less conveniently. In order to bring a claim of maritime attachment within the Second Circuit, a plaintiff must allege that "the defendant's property may be found within the district" where the garnishment action is being brought. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 & n.5 (2d Cir. 2006). The Southern District of New York is completely unable to entertain a claim seeking admiralty attachment of property on board a vessel, such as the Beluga, located in the Western District of Washington. Absent an identity of claims, res judicata cannot apply in this case.[12]

---

[12]The parties have been inconsistent in their use of the term "res judi-cata" in their briefing, sometimes referring to both claim and issue preclusion. It is also unclear from the district court's order whether its decision rests solely on claim preclusion or alternatively on both claim and issue preclusion. Insofar as the district court may have relied on issue preclusion, we conclude that issue preclusion also does not apply here.

## C

**[6]** Although we have not previously elaborated upon equitable vacatur in the context of admiralty law, the Second Circuit has described three specific instances when equitable vacatur of a writ of maritime attachment may be appropriate:

> [A] district court may vacate [a writ of maritime attachment] if the defendant shows . . . that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant *in the district where the plaintiff is located*; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Id.* at 445 (emphasis added). Here, the district court held that equitable vacatur was appropriate because the second situation described by the Second Circuit applied. The district court reasoned that ProShipLine and EP-Team had successfully obtained *in personam* jurisdiction over Aspen in the Southern District of Texas and that ProShipLine and EP-Team were both "present" in that district. Although we agree with and adopt the contours of equitable vacatur laid out by the Second Circuit, we disagree with the district court that the second situation applies to EP-Team.

**[7]** A plain language reading of the phrase "the district where the plaintiff is located" suggests that the plaintiff must

---

First, the Southern District of New York's conclusion that the contract is not a maritime contract was rejected by the Second Circuit on appeal and gives no basis for issue preclusion. Second, the district court's conclusion that ProShipLine was "present" in the Southern District of Texas is irrelevant to the issue of whether EP-Team is "located" there. *See* Part III.C, *infra*. And third, the possibility that ProShipLine abused the *ex parte* nature of Rule B attachment proceedings in the Southern District of New York is also irrelevant to the action before us.

have a materially significant presence in the district where it is obtaining *in personam* jurisdiction over the defendant.[13] The second *Aqua Stoli Shipping* situation stresses that the district must be "the" district where the plaintiff is located, not "a" district or "any" district where the plaintiff is located and can obtain in personam jurisdiction over the defendant. We interpret this language to allow for equitable vacatur in situations when a plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff has its most significant presence. Our understanding of the second *Aqua Stoli* situation is in complete agreement with the Southern District of New York, which has addressed this exact question. *See Peter Dohle Schiffahrts KG v. Sesa Goa Ltd.*, 642 F. Supp. 2d 216, 224 (S.D.N.Y. 2009) (holding that the second *Aqua Stoli* scenario "references 'the' district where the plaintiff is located . . . [a] concept closely align[ed] with the legal term 'domicile' ").

[8] There is no question that ProShipLine is "located" in the Southern District of Texas. Aspen's briefing alleges, and the record supports, that ProShipLine's principal place of business is in Houston, Texas, thereby prominently locating it within that district. In reviewing the record before us, however, we find no support for the proposition that EP-Team is "located" in the Southern District of Texas. The record does not even show that EP-Team has a registered agent for service of process in the Southern District of Texas,[14] much less that

___

[13]As a practical matter, the phrase must require more than *in personam* jurisdiction over the plaintiff. Otherwise, the moment that a plaintiff brings suit against a defendant anywhere in the country, both parties would be left adrift, unable to obtain maritime attachment in any jurisdiction due to the availability of equitable vacatur. Such a broad understanding of equitable vacatur would threaten to engulf the maritime attachment rules and run contrary to the intention that equitable vacatur apply only in "limited circumstances." *Aqua Stoli Shipping,* 460 F.3d at 445.

[14]Indeed, even EP-Team was unable to establish that it had a registered agent for service of process in the Southern District of Texas when it attempted to prove its presence in that district as a defense in the First New York Action. *See Aspen Infrastructures, Ltd. v. E.P. Team, Inc.*, 2008 WL 2663491, at *1 (S.D.N.Y. 2008).

EP-Team has such a significant presence in that district as to make it "the" district where EP-Team is located.[15] Absent such a showing, the district court's application of equitable vacatur to EP-Team individually was an abuse of discretion. EP-Team has not been shown to be "located" in a district where it has *in personam* jurisdiction over Aspen.[16]

**D**

Aspen argues that, in addition to the three reasons provided by the district court, equitable vacatur of the writ was also appropriate because ProShipLine and EP-Team violated 9 U.S.C. § 8 by allegedly seeking a Rule B writ without pursuing arbitration in Singapore. The district court was "not convinced" by Aspen's argument. Neither are we.

[9] Section 8 provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, . . . the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party . . . and the court shall then have jurisdiction to direct the parties to proceed with the arbitration . . . .

---

[15]The district court's sole reason for concluding that EP-Team was "located" in the Southern District of Texas was that, in the Second Texas Action, ProShipLine and EP-Team had jointly alleged in their complaint that their principal place of business was in the Southern District of Texas. Mere allegations in a complaint in a different suit in a different jurisdiction are entirely insufficient grounds on which to conclude that EP-Team was "located" in the Southern District of Texas, especially when the allegations are contrary to other facts in the record.

[16]Because the district court abused its discretion in vacating the writ as to EP-Team, it also automatically abused its discretion by ordering EP-Team to pay Aspen the market value of the attached resources. We need not address ProShipLine's and EP-Team's argument that the order to reimburse Aspen constituted the entry of a money judgment.

9 U.S.C. § 8. The Supreme Court interprets Section 8 as a Congressional declaration that "traditional admiralty procedure with its concomitant security should be available to the aggrieved party" despite the fact that the "parties had agreed to arbitrate." *The Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 46 (1944). The ability to pursue maritime attachment, however, does not lessen a party's "obligation to arbitrate [its] grievance." *Id*. Aspen argues that the district court properly vacated the writ because ProShipLine and EP-Team have not been diligent in pursuing arbitration in Singapore.

**[10]** Aspen's argument is weak on several counts. Neither the plain text of Section 8 nor the Supreme Court's interpretation of it suggests that the Section permits a district court to vacate a Rule B writ if it deems that the plaintiff is not pursuing arbitration. Aspen also fails to salvage its argument by citing any case in support of its novel understanding of Section 8. Moreover, even if we were to adopt Aspen's interpretation, it still would not apply here because the record is ambiguous as to which party has actually been at fault for the slow progress of the Singapore arbitration. The district court acted well within its discretion in concluding that Aspen's argument lacks merit.

## IV

ProShipLine and EP-Team contend that the district court also erred by concluding that a district court lacks the legal capacity under the Admiralty Rules to order a party to post security in lieu of garnishment. The district court's conclusion was correct.

**[11]** Supplemental Admiralty and Maritime Claims Rule E(4)(b) ("Rule E(4)(b)") states that a marshal may, pursuant to a warrant, take possession of tangible property for safe custody or, in cases where "possession is impracticable," may "affix a copy [of the warrant] to the property in a conspicuous place." Rule E(5) provides that the "owner of any vessel may

file a general bond or stipulation" to cause the execution of all processes against the vessel, such as garnishment, to be stayed provided that the bond or stipulation is sufficient.

**[12]** ProShipLine and EP-Team argue that, in the aggregate, these Rules empower a district court to order a party to post security in lieu of garnishment. Neither provision even remotely grants district courts such authority. Rule E(4)(b) refers to impracticability only in the sense that it allows a marshal to leave notice on property that is "impracticable" to possess. Rule E(5) is a permissive rule that allows garnishees to post security in lieu of having their property garnished. ProShipLine's and EP-Team's novel argument that these provisions allow courts to compel the posting of security in lieu of garnishment in instances of impracticability completely misinterprets the underlying rules.

**V**

**[13]** The district court abused its discretion by vacating the writ as it pertains to EP-Team. The writ shall be reinstated on behalf of EP-Team individually. Because the writ was improperly vacated as to EP-Team, the order to reimburse Aspen for the value of the garnished property is also improper.

**AFFIRMED in part, REVERSED in part and REMANDED.** Each party shall bear its own costs on appeal.

---

TALLMAN, Circuit Judge , concurring in part, dissenting in part:

I agree with the majority's analysis regarding ProShipLine, and concur in the opinion affirming the vacatur of attachment against that company. However, I disagree that the writ of

attachment was appropriate as to EP-Team, and as to that portion of the court's opinion, I respectfully dissent.

I would hold that Judge Franklin D. Burgess did not err under Rule E by vacating the Rule B writ of attachment against EP-Team. Because our jurisprudence interpreting Rule E vacatur is in its infancy, we have rarely had the opportunity to address when vacatur is appropriate. In *Equatorial Marine Fuel Management Services Pte Ltd. v. MISC Berhad*, No. 08-57046, 2009 WL 59212, at *1 (9th Cir. Jan. 11, 2010), we upheld vacatur because the plaintiff failed to show a need for attaching the defendant's property. There we explained that Rule B attachment of a defendant's property is appropriate if: "(1) plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Id.* (citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006); Fed. R. Civ. P., Supp. R. B)). We concluded that a court may order vacatur of that attachment under Supplemental Rule E(4)(f) if the "plaintiff failed to meet one of the four conditions for attachment." *Equatorial Marine Fuel*, 2009 WL 59212, at *1 (citing *Aqua Stoli Shipping*, 460 F.3d at 445).

However, we did not discuss any other instance where vacatur might be an appropriate remedy. Prior to the promulgation of Rule E(4)(f), we opined on the underlying reasons for granting pre-judgment attachment. We looked to Supreme Court precedent, which informed us that "[t]he process of foreign attachment . . . has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 636 (9th Cir. 1982) (quoting *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950) (citation omitted)). From this we gleaned that the first purpose of attachment is met by "obtain[ing] jurisdiction over the respondents *in personam* through their property." *J.*

*Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139, 141 (9th Cir. 1995) (citing *Polar Shipping Ltd.*, 680 F.2d at 636-37).

Since obtaining *in personam* jurisdiction is a principal justification for authorizing a prejudgment writ of attachment, it follows that if the plaintiff can secure such jurisdiction over the defendant by some other means, then there is no need to attach property. Therefore, it seems reasonable that vacatur is appropriate if *in personam* jurisdiction is available over all parties in another court. This is what the Second Circuit held in *Aqua Stoli Shipping*. Our sister circuit logically explained that, even respecting the time-honored special proceedings applicable to maritime law, there are instances where courts should permit equitable vacatur. The Second Circuit was "persuaded that vacatur may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff." *Aqua Stoli Shipping*, 460 F.3d at 445. The court continued: "[a] maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." *Id.* at 444-45.

Here, my colleagues recognize that ProShipLine and Aspen are subject to *in personam* jurisdiction in the Southern District of Texas. However, the court's opinion concludes that there is a dearth of evidence in the record to support a finding that the Southern District of Texas would have jurisdiction over EP-Team. This, it says, requires that we reinstate the writ as to EP-Team only.

It does not follow that we should affirm the district court's grant of vacatur as to ProShipLine and not as to EP-Team. EP-Team is "present in the same district [as defendant Aspen] and would be subject to jurisdiction there. *Id.* at 444-45. That district is the Southern District of Texas. The reason is simple. EP-Team acceded to *in personam* jurisdiction there by choos-

ing to file the underlying lawsuit against Aspen within that district, and counsel conceded jurisdiction there at oral argument. It is a basic tenet of personal jurisdiction jurisprudence that one subjects himself to the jurisdiction of the court where he brings suit. *Cf.* 28 U.S.C. § 1404(a) (not requiring sufficient minimum contacts over plaintiff for transfer to be appropriate); *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement . . . that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint."); *FTC v. Watson Pharms., Inc.*, 611 F. Supp. 2d 1081, 1090 (C.D. Cal. 2009) ("[T]here is no need to enter into an analysis of minimum contacts between the State of California and Georgia, because it is not necessary for the transferee forum to have personal jurisdiction over the plaintiff.") (citing *Murray v. Scott*, 176 F. Supp. 2d 1249, 1255 (M.D. Ala. 2001) (same)).

EP-Team's consent to jurisdiction was not merely some "allegation" that it was subject to suit in that district. It willingly availed itself of the process and power of that court by choosing to file its complaint against Aspen there. It should not now be permitted to claim that it is not "present" in the Southern District of Texas when it initiated the underlying claim in this case in that very court.

Because the record strongly suggests that maritime attachments are being employed by ProShipLine and EP-Team for the vexatious purpose of harassing Aspen in order to gain tactical advantage in the pending commercial disputes among the parties in Singapore and Houston, the district court did not abuse its discretion in vacating the writs. Equity should not countenance such litigation tactics even in a maritime case.

Therefore, I would hold that vacatur was appropriate as to both ProShipLine and EP-Team.