**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EQUATORIAL MARINE FUEL
MANAGEMENT SERVICES PTE LTD.,
                *Plaintiff-Appellant,*

            v.

MISC BERHAD,
                *Defendant-Appellee.*

No. 08-57046

D.C. No.
2:08-cv-07756-
VBF-CT

OPINION

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted
July 7, 2009—Pasadena, California

Filed January 11, 2010

Before: Alex Kozinski, Chief Judge, Ferdinand F. Fernandez
and N. Randy Smith, Circuit Judges.

Opinion by Chief Judge Kozinski

## COUNSEL

Brian D. Starer and Alan Heblack, Squire, Sanders & Dempsey L.L.P., New York, New York; and James H. Broderick, Jr. and Jeffrey S. Renzi, Squire, Sanders & Dempsey L.L.P., Los Angeles, California, for the plaintiff-appellant.

William H. Collier, Jr., Elizabeth P. Beazley, James A. Marissen and Tara B. Voss, Keesal, Young & Logan, Long Beach, California, for the defendant-appellee.

**OPINION**

KOZINSKI, Chief Judge:

We consider whether the district court erred in vacating a maritime attachment.

**Facts**

Equatorial Marine Fuel Management Services sues MISC Berhad for breach of contract and unjust enrichment. Equatorial, a supplier of marine fuel, claims MISC agreed to purchase over $22 million worth of bunker fuel—which is used to power ships—for vessels owned and operated by MISC. Equatorial delivered the bunkers to MISC through Grandeur Trading & Services, but MISC never paid Equatorial.

MISC says it never contracted with Equatorial. According to MISC, it entered into a contract with the bunker-trader Market Asia Link (MA Link) to procure bunkers for MISC. So long as MISC got its bunkers at the agreed upon price, it didn't much care who MA Link bought them from, which turned out to be Equatorial. And MISC paid MA Link for all the bunkers it received.

Unfortunately, MA Link became insolvent and never paid Equatorial. One party has to suffer the loss: Either Equatorial won't get paid or MISC will pay twice. Equatorial prefers the latter option, so it brought this suit against MISC in federal district court. In order to establish jurisdiction over MISC, Equatorial filed an *ex parte* application for maritime attachment of MISC's property that could be found in the district, including its ship Bunga Kasturi Lima, which the district court granted. After receiving notice of the attachment, MISC filed a motion to vacate it. Finding that Equatorial failed to show it had a valid prima facie admiralty claim against MISC, the district court vacated the attachment subject to MISC's posting a $400,000 bond pending Equatorial's appeal.

**Analysis**

**[1]** We review the order vacating the maritime attachment for abuse of discretion, although we review any legal conclusions underpinning the order de novo. *Williamson* v. *Recovery Ltd. P'ship*, 542 F.3d 43, 48 (2d Cir. 2008). Under Rule B of the Supplemental Admiralty Rules, plaintiff may attach a defendant's property if four conditions are met: (1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd.* v. *Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006); *see Fed. R. Civ. P., Supp. R. B.*

After receiving notice of the attachment, defendant may contest it under Supplemental Rule E(4)(f). Fed. R. Civ. P., Supp. R. E(4)(f). At a Rule E hearing, defendant may argue that the attachment should be vacated because plaintiff failed to meet one of the four conditions for attachment. *Aqua Stoli*, 460 F.3d at 445; *see also* Fed. R. Civ. P., Supp. R. E. advisory committee's note (1985 amends.) (explaining that at a Rule E hearing, defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings"). Plaintiff has the burden of justifying a continued attachment. Fed. R. Civ. P., Supp. R. E(4)(f).

**[2]** MISC argues that Equatorial's claims aren't maritime in nature, and the district court therefore lacked admiralty jurisdiction. To determine whether Equatorial's claims sound in admiralty, we look to whether "the principal objective" of the claimed contract or dealings "is maritime commerce." *Norfolk S. Ry.* v. *James N. Kirby, Pty Ltd.*, 543 U.S. 14, 25 (2004). Here, Equatorial's claim is that it supplied bunkers to MISC's ships, and regardless of whether this fuel was delivered by a third party, the alleged dealings are clearly maritime in nature. *See Exxon Corp.* v. *Cent. Gulf Lines, Inc.*, 500 U.S. 603,

612-13 (1991). Thus, the district court properly exercised admiralty jurisdiction over Equatorial's claims.

**[3]** Nevertheless, the district court properly vacated the attachment because Equatorial failed to show it had a valid prima facie breach of contract or unjust enrichment claim against MISC. As to Equatorial's breach of contract claim, Equatorial failed to show it had a contract with MISC. Equatorial's verified complaint alleges that MISC "agreed" to each sale and delivery of fuel by Equatorial and "accepted and used" that fuel. MISC, however, denied this allegation and presented evidence that it contracted only with MA Link— including a copy of its contract with and documentation of its payments to MA Link.

**[4]** To contradict MISC's evidence, Equatorial relies on the documents attached to its complaint and its response to the motion to vacate: letters from MA Link to Compass Marine Fuels (a bunker broker used by Equatorial) showing MISC as the "buyer" and Equatorial as the "seller"; invoices from Compass to Equatorial listing MISC as the "buyer" and Equatorial as the "seller"; bunker delivery notes from Grandeur stating that it delivered bunkers to MISC; and tax invoices from Equatorial addressed to MISC as the buyer, which were sent to Compass. But these documents, which were never sent to MISC, don't show that MISC was even aware that Equatorial was the bunker supplier, let alone that it entered into a contract with Equatorial. At most, these documents show that Equatorial thought it was contracting with MISC. But contracting, like dancing the tango, takes two; one party's belief that there was an agreement isn't enough. *See* 1-4 Arthur L. Corbin et al., *Corbin on Contracts* § 4.13 (rev. ed. 1993).

**[5]** Equatorial argues that MA Link was MISC's agent. We decline to consider this claim because Equatorial failed to allege an agency relationship between MISC and MA Link in its complaint, which it never sought to amend. *See P.R. Ports Auth.* v. *Barge Katy-B, O.N. 606665*, 427 F.3d 93, 106 (1st

Cir. 2005) ("Given [plaintiff's] failure properly to plead post-sale port charges as an alternate basis for an in rem claim, the district court's vacation of the arrest is unimpugnable.").

**[6]** Equatorial also failed to show it had a valid prima facie unjust enrichment claim against MISC. Even though Equatorial arranged for the delivery of the bunkers which MISC accepted and used, MISC presented unrebutted evidence that it paid MA Link for the bunkers. Because MISC paid for the bunkers, it hasn't been unjustly enriched. *See In re De Laurentiis Entm't Group Inc.*, 963 F.2d 1269, 1273 n.6 (9th Cir. 1992) (recognizing that California law does not provide a quantum meruit claim where the benefitted party has paid a general contractor for the work done, even if the general contractor failed to pay the subcontractors who did the work).

**[7]** Equatorial argues that it isn't required to prove its case just to defeat the motion to vacate. This is certainly true, but in order to justify the continued attachment of MISC's property, Equatorial had the burden of showing that it had a *valid* prima facie breach of contract or unjust enrichment claim. *See Aqua Stoli*, 460 F.3d at 445; *cf. Mitchell* v. *W.T. Grant Co.*, 416 U.S. 600, 609 (1974) ("[W]e think it comports with due process to permit the initial seizure on sworn *ex parte* documents, followed by the early opportunity to put the creditor to his proof."). Equatorial failed to carry this burden. Once MISC came forward with evidence showing that it contracted with MA Link, not Equatorial, and paid MA Link for the bunkers, Equatorial needed to do something to contradict this showing. Because Equatorial failed to do this, the district court properly vacated the attachment. *See Williamson*, 542 F.3d at 52-54 (district court properly vacated attachment where defendant produced evidence at the Rule E(4)(f) hearing that it didn't contract with plaintiffs, contradicting the generalized allegations in plaintiffs' verified complaint).

**AFFIRMED.**