TALLMAN, Circuit Judge,
concurring in part, dissenting in part:
I agree with the majority’s analysis regarding ProShipLine, and concur in the opinion affirming the vacatur of the maritime attachment against that company. However, I disagree that the writ of attachment was appropriate as to EP-Team (and with the majority’s conclusion that the district court erred in vacating it), and as to that portion of our court’s opinion, I respectfully dissent. I would hold that the late Judge Franklin D. Burgess did not err under Rule E by vacating the Rule B writ of attachment against EP-Team.
The writ of attachment in maritime law has ancient roots. See, e.g., Manro v. Almeida, 23 U.S. (10 Wheat.) 473, 6 L.Ed. 369 (1825). Historically, the writ served dual purposes: (1) to obtain in personam jurisdiction over the respondent, and (2) to ensure the availability of assets to satisfy a judgment in case the plaintiff succeeds on the merits. Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A, 339 U.S. 684, 693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950); Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 636-37 (9th Cir.1982). Rule B, entitled “In Personam Actions: Attachment and Garnishment,” codifies the ability of a plaintiff to seek a writ of attachment in admiralty.
In Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad, 591 F.3d 1208, 1210 (9th Cir.2010), we specified the elements for a Rule B writ of attachment: “(1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment.” Id. (citing Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir.2006); Fed.R.CivJP., Supp. R. B). Noticeably missing from the list is a need for security to satisfy a future judgment. Indeed, Rule B specifically limits the use of attachment to those situations in which the defendant “is not found within the district,” in other words, when the court does not (yet) have in personam jurisdiction over the defendant. Attachment solely to ensure satisfaction of a future judgment is not a basis for Rule B attachment.[1]
Turning from issuance of a writ of attachment to vacatur of it, Ninth Circuit jurisprudence interpreting when a Rule E vacatur is warranted is not well developed. In Equatorial Marine Fuel, we concluded that a court may order vacatur of a Rule B attachment under Supplemental Rule E(4)(f) if the “plaintiff failed to meet one of the four conditions for attachment” outlined above. 591 F.3d at 1210 (citing Aqua Stoli Shipping, 460 F.3d at 445). However, we did not discuss any other instance where vacatur might be an appropriate remedy.
Because of the absence of Ninth Circuit caselaw, my colleagues quite appropriately turned to a court with considerably more experience with Rule E vacatur for guidance, and adopted the test propounded by the Second Circuit in Aqua Stoli Shipping. Specifically, the majority endorsed the Second Circuit’s listing of specific instances when equitable vacatur may be appro *973 priate: “1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.” Maj. op. at 969 (quoting Aqua Stoli Shipping, 460 F.3d at 445). Unfortunately, the majority mechanically recited this formulation then promptly ignored its rationale when applying the law to the facts of this case.
As the Second Circuit explained, maritime attachments arose because maritime parties are “peripatetic,” so the availability of a writ of attachment to obtain in personam jurisdiction over a party avoids requiring a plaintiff to “scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.” Id. at 443 (emphasis added). Since obtaining in personam jurisdiction is a principal justification for authorizing a prejudgment writ of attachment, it follows that if the plaintiff can secure such jurisdiction over the defendant by some other means, then there is no need to attach property. Indeed, the Second Circuit concluded that vacatur of a writ of attachment “may be warranted when the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff.” Id. at 444 (emphasis added). Starting from this premise, the Aqua Stoli Shipping court then listed three circumstances in which equitable vacatur may be appropriate — the three circumstances quoted above — including two in which a defendant would be subject to in personam jurisdiction in a district convenient to the plaintiff.
Not only do my colleagues fail to consider the rationale behind the Second Circuit’s list, they rigidly adhere to its formulation. Indeed, the majority devotes an entire page to parsing the meaning of “the district” and “located” in the phrase “the district where the plaintiff is located.” Maj. op. at 969. A careful reading of Aqua Stoli Shipping, however, shows that the Second Circuit intended no such precision, nor did it limit its application to “the federal district where the plaintiff has its most significant presence.” Maj. op. at 969. Before propounding the three prongs of its test, the Second Circuit first noted that “[a] maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant’s assets.” Aqua Stoli Shipping, 460 F.3d at 444-45 (emphasis added). That is what happened here.
Whether the Aqua Stoli Shipping bases for vacatur are read literally or more broadly, I share my colleagues’ recognition that ProShipLine is located in the Southern District of Texas and that Aspen is subject to in personam jurisdiction there. Accordingly, equitable vacatur was appropriate as to ProShipLine. We part ways, however, when the court’s opinion concludes that there is a dearth of evidence in the record to support a finding that the Southern District of Texas would have jurisdiction over EP-Team, thus concluding that we must reinstate the writ as to that party.
First, EP-Team meets the Aqua Stoli Shipping test because it is “present in the same district [as defendant Aspen] and would be subject to jurisdiction there.” Id. at 444-45. EP-Team acceded to in personam jurisdiction in the Southern District of Texas by choosing to file the underlying lawsuit against Aspen in that district, and EP-Team’s counsel conceded jurisdiction there at oral argument. It is a basic tenet of personal jurisdiction jurisprudence that one subjects himself to the jurisdiction of the court where he brings *974 suit. See, e.g., Merchants’ Heat & Light Co. v. James B. Clow & Sons, 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907) (“[B]y setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it.”); SEC v. Ross, 504 F.3d 1130, 1149 (9th Cir.2007) (“[A] party cannot simultaneously seek affirmative relief from a court and object to that court’s exercise of jurisdiction.”).
EP-Team’s consent to jurisdiction was not merely some “allegation” that it was subject to suit in that district. It willingly availed itself of the process and power of that court by choosing to file its complaint against Aspen there. It should not now be permitted to claim that it is not “present” or “located” in the Southern District of Texas when it initiated the underlying claim in this case in that very court. Freeman v. Bee Mach. Co., 319 U.S. 448, 454, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) (explaining that a corporation is found or present in a district for all purposes of a suit once it has invoked the jurisdiction of the federal court). For that reason, EP-Team’s counsel candidly, and appropriately, conceded in personam jurisdiction at oral argument.
Moreover, the evidence that the Southern District of Texas is a more convenient forum than the Western District of Washington for EP-Team’s action against Aspen is overwhelming. Even if EP-Team’s principal place of business[2] is in Flower Mound, Texas, in the Eastern District, rather than Houston as EP-Team has repeatedly alleged, the federal district court in Houston is only some 270 miles from EP-Team’s headquarters. The Tacoma, Washington, courthouse where this action began, on the other hand, is 2100 miles from EP-Team’s headquarters. Further, as EP-Team has always retained the same attorneys as co-plaintiff ProShipLine, which is located in Houston, it is unclear what jurisdiction could be more convenient than Southern Texas. And, as ProShipLine was created by EP-Team and headquartered in Houston specifically to carry out the requirements of its Agreement with Aspen — the ultimate subject of this dispute — EP-Team already has, and in fact already created, substantial contacts with the Southern District of Texas that it lacks in the Western District of Washington. The Southern District of Texas is convenient to EP-Team; indeed, “the district has been convenient enough for [EP-Team] to have chosen to initiate litigation against Aspen in two separate actions there.” ProShipLine, Inc. v. Aspen Infrastructures, Ltd,., 585 F.3d 105, 117 (2d Cir.2009).
Additionally, the underlying rationale for the issuance of a writ of maritime attachment was absent from this case since the beginning. EP-Team had already obtained in personam jurisdiction over Aspen in Texas when it sought this attachment. The goal of avoiding the need for EP-Team to “scour the globe to find a proper forum for suit” had already been achieved.[3] In fact, EP-Team candidly acknowledged that it sought the writ “to make more likely the collection” of any *975 arbitration award — not to obtain in personam jurisdiction.
Finally, the record strongly suggests that maritime attachments are being employed by ProShipLine and EP-Team for the vexatious purpose of harassing Aspen in order to gain a tactical advantage in the pending commercial disputes among the parties in Singapore and Houston. I would hold that fact alone sufficient as a separate basis for granting equitable vacatur. Equity should not countenance such litigation tactics, even in a maritime case.
The district court did not abuse its discretion when it found equitable vacatur appropriate as to both ProShipLine and EP-Team. Because the majority holds otherwise as to EP-Team, I respectfully dissent from that part of the court’s opinion.

. Rule B(l)(e) specifies that seizure of property to secure satisfaction of a judgment is governed instead by Federal Rule of Civil Procedure 64.

. The Supreme Court has recently clarified that the term "principal place of business" means, for purposes of federal diversity jurisdiction, the locale where a "corporation’s high level officers direct, control, and coordinate the corporation's activities,” often called the "nerve center." Hertz Corp. v. Friend, - U.S. -, 130 S.Ct. 1181, 1186, -L.Ed.2d - (2010). It is unclear whether EP-Team meets this definition — or needs to — with respect to its claim that Flower Mound, Texas, is its principal place of business.

. For a company providing global logistics management services, with offices in Texas, Florida, Connecticut, the Netherlands, France, Italy, Germany, and Singapore, which contracted with an Indian company *975 and agreed to arbitration in Singapore following English law, it is unclear that “scouring the globe” would present much of a hardship. Indeed, EP-Team has voluntarily scoured this country to attach Aspen’s assets wherever they may be found.