**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SIKOUSIS LEGACY, INC.,

*Plaintiff-Appellant*,

BAHLA BEAUTY, INC.; K
INVESTMENTS, INC.,

*Intervenor-Plaintiffs-Appellants*,

v.

B-GAS LIMITED, AKA Bepalo LPG
Shipping Ltd.; B-GAS A/S;
BERGSHAV SHIPPING LTD.; B-
GAS HOLDING LTD.; BERGSHAV
AFRAMAX LTD.; BERGSHAV
SHIPHOLDING A/S; BERGSHAV
INVEST A/S; LPG INVEST A/S;
ATLE BERGSHAVEN,

*Defendants-Appellees*.

No. 23-15245

D.C. No. 3:22-cv-
03273-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted February 13, 2024
San Francisco, California

Filed March 25, 2024

Before:  Carlos T. Bea, David F. Hamilton,[*] and Morgan
Christen, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[**]

### Admiralty

The panel affirmed the district court's order vacating plaintiffs' quasi in rem attachment of a vessel owned by Bergshav Aframax Ltd., a defendant in an admiralty action seeking fulfillment of arbitration awards.

The arbitration awards, arising from a contract dispute, were owed to plaintiffs by a different corporate entity, B-Gas Ltd., later renamed Bepalo.  Plaintiffs sought to "pierce the corporate veil" of Bepalo and hold Aframax liable for the arbitration awards on a theory that Aframax and Bepalo were alter egos.

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not abuse its discretion when it vacated the pre-judgment attachment of the vessel. Adopting a probable cause standard, and applying federal common law, the panel affirmed the district court's conclusion that plaintiffs failed to show a reasonable probability of success on their veil piercing theory.

## COUNSEL

George A. Gaitas (argued) and Jonathan M. Chalos, Gaitas & Chalos PC, Houston, Texas, for Plaintiffs-Appellants.

Keith B. Letourneau (argued) and Zachary R. Cain, Blank Rome LLP, Houston, Texas for Defendants-Appellees.

## OPINION

BEA, Circuit Judge:

Plaintiff-Appellant Sikousis Legacy, Inc. and Plaintiffs-in-Intervention Bahla Beauty, Inc. and K Investments, Inc. (collectively, "Plaintiffs") appeal the district court decision that vacated their quasi in rem maritime attachment of the vessel M/T Berica ("*Berica*"), which is owned by Defendant-Appellee Bergshav Aframax, Ltd. ("Aframax"). The vessel was attached pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to fulfill arbitration awards, arising from a contract dispute, owed to Plaintiffs by a different corporate entity, B-Gas Ltd. (later renamed "Bepalo"). Plaintiffs sought to "pierce the corporate veil" of Bepalo and hold Aframax liable for the

arbitration awards owed to Plaintiffs by Bepalo on a theory that Aframax and Bepalo are alter egos. Under Plaintiffs' theory, Aframax's assets—including the *Berica*—were available to satisfy the awards.

Aframax opposed Plaintiffs' claims by making a restricted appearance under Rule E(8)[1] and moved to vacate the attachment under Rule E(4)(f). The district court found Plaintiffs failed to show probable cause that they would prevail on their theory of corporate veil piercing. The district court granted Aframax's motion to vacate the attachment, and Plaintiffs timely appealed.

We conclude the district court did not abuse its discretion when it vacated the pre-judgment attachment of the *Berica* after Rule E(4)(f) proceedings. Plaintiffs failed to show a reasonable probability of success on their corporate veil piercing theory when confronted with Aframax's evidence that the Bergshav Group,[2] the owner of the attached *Berica*, did not dominate and control Bepalo, the debtor under the

---

[1] Rule E(8) defines a "restricted appearance" as: "An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, [which appearance is] expressly restricted to the defense of such claim, and . . . is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."

[2] We use the term "Bergshav Group" to refer to the corporate entities B-Gas A/S, Bergshav Shipping Ltd., B-Gas Holding Ltd., Aframax, Bergshav Shipholding A/S, Bergshav Invest A/S, LPG Invest A/S, and the individual Atle Bergshaven, all of whom are Defendants-Appellees. B-Gas Ltd. was renamed Bepalo LPG Shipping Ltd., but we refer to it exclusively as "Bepalo" for consistency. Aframax, the owner of the attached *Berica*, is the only entity of the Bergshav Group that has entered an appearance in this case.

arbitration awards. Therefore, the district court's determination that Plaintiffs failed to meet their burden was logical and supported by record evidence. The issue whether Bepalo—the only entity against which Plaintiffs have arbitration awards—was dominated and controlled by the Bergshav Group was permissibly determined in favor of Aframax and is dispositive. Hence, we affirm.

## I. BACKGROUND

### A. Contractual Dispute and Bergshav Group Restructuring[3]

In May 2020, the corporation Bepalo had three shareholders: Bergshav Shipping Ltd. (51%), Pareto Maritime Secondary Opportunity Fund AS[4] ("Pareto") (39%), and Lorentzens Skibs AS (10%). Bergshav Shipping Ltd. is a wholly owned subsidiary of Bergshav Shipholding AS. Bergshav Shipholding AS has two shareholders: Atle Bergshaven and Bergshav AS, which is jointly owned by two persons: Atle and Ebbe Bergshaven.

At all relevant times, Bepalo had seven directors, three of whom were Atle Bergshaven, Panagiotis Ioannou, and Vryonis Kyperesis. Those three directors were also directors of Bergshav Shipping Ltd. and its wholly owned subsidiary, Aframax. Bepalo's other four directors included Richard

---

[3] We attach an Appendix to this opinion with two tables, which Plaintiffs provided to the district court. These tables reflect the Bergshav Group corporate structures before and after the relevant restructuring. Aframax does not dispute the accuracy of these tables.

[4] "AS" is an abbreviation for the Norwegian word "aksjeselskap," which translates to the English word "incorporated." *Aksjeselskap*, CAMBRIDGE DICTIONARY, NORWEGIAN-ENGLISH DICTIONARY, https://dictionary.cambridge.org/dictionary/norwegian-english/aksjeselskap (2023) [https://perma.cc/R7N7-UAGE].

Jansen (on behalf of Pareto), Nicolai Lorentzen (on behalf of Lorentzens Skibs AS), and two other Bergshav Group directors.

Beginning in 2014, Plaintiffs chartered liquid petroleum gas carrier vessels to Bepalo for Bepalo's use in transporting gas. Citing a market decline in the first quarter of 2020 in response to the COVID-19 pandemic, Bepalo contacted Plaintiffs in May 2020 and requested a significant six-month reduction in daily hire rates and a two-year credit period for repayment of the reduction without additional interest. Plaintiffs rejected this request.

Beginning in June 2020, the Bergshav Group commenced a restructuring. B-Gas Holding Ltd. was incorporated in Cyprus as a new entity, wholly owned by Bergshav Shipholding AS. LPG Invest AS was incorporated in Norway as a new entity with the same three shareholders as Bepalo: Bergshav Invest AS (70%)—which is wholly owned by Bergshav Shipholding AS—Lorentzens Skibs AS (15%), and Pareto (15%). LPG Invest AS had three directors, all of whom were directors of Bepalo: Atle Bergshaven, Richard Jansen (on behalf of Pareto), and Nicolai Lorentzen (on behalf of Lorentzens Skibs AS).

As these actions were taken, the directors of Bergshav Shipping Ltd. held a meeting at which Andreas Hannevik, the Chief Financial Officer of Bergshav Shipholding AS, presented to the Board his restructuring proposal. In Hannevik's declaration submitted to the district court by Aframax, he explained his plan had two parts: (1) sell Bergshav Shipping Ltd.'s 51% share of Bepalo to B-Gas Holding Ltd. for $1, a nominal price that reflected the "risk of loss and the potential future failure of the company," and (2) sell Aframax to Bergshav Shipholding AS. The purpose

of the restructuring was to "confine the risk of Bepalo's potential insolvency" and "to separate the various assets and risks better." The directors voted to approve part one, the sale of Bergshav Shipping Ltd.'s 51% share of ownership in Bepalo to B-Gas Holding Ltd., but rejected part two, the sale of Aframax.

Later in June 2020, the directors of LPG Invest AS, who were also directors of Bepalo, authorized LPG Invest AS to enter into restructuring agreements in which Bepalo would sell four vessels it owned to LPG Invest AS, and LPG Invest AS would lease those vessels back to Bepalo; this arrangement allowed Bepalo to exchange assets (its vessels) for liquidity (LPG Invest AS's cash). That same day, the directors of Bepalo, including the three common directors of LPG Invest AS, approved Bepalo's entry into these agreements. Plaintiffs allege Bepalo did not disclose the sale of the vessels to Plaintiffs, as required by their charter agreements.

In September and October 2020, Plaintiffs allege Bepalo paid only 50% of the amount due in Plaintiffs' invoices. Plaintiffs commenced arbitration proceedings against Bepalo under their charter agreements. On October 13, 2020, Plaintiffs received a letter from "BEPALO LPG Shipping Ltd (formerly known as B-Gas Limited[)]." The letter stated that due to the COVID-19 pandemic, Bepalo had declared insolvency in Cyprus, was terminating its charter agreements, and would close its business that day. Plaintiffs successfully pursued their arbitration claims and obtained awards totaling about $10 million USD against Bepalo.

## B.  Procedural History

To satisfy Plaintiffs' arbitration judgments against Bepalo,[5] Plaintiffs commenced admiralty proceedings against the Bergshav Group under Rule B through attachment of the vessel *Berica* in June 2022 in the Northern District of California.[6]  Because the *Berica* is owned by Aframax, Plaintiffs based their attachment of the *Berica* on a theory of alter ego liability.  Plaintiffs alleged that Aframax was involved in the Bergshav Group's scheme to "strip [Bepalo] of all of its fixed assets" and "put [Bepalo] out of business."  Hence, according to Plaintiffs, the Bergshav Group, as shareholders of Bepalo, should be held liable for Bepalo's debt, and, for purposes of satisfying the debt, Aframax's corporate character should be ignored.

As noted, Aframax entered a restricted appearance under Rule E(8) and moved to vacate the attachment under Rule E(4)(f), arguing that Aframax, which is wholly owned by the Bergshav Group, was not the alter ego of Bepalo and therefore was not liable for Bepalo's debts.  Plaintiffs opposed the motion, and a hearing was held on July 29, 2022.  The district court continued the hearing, ordered limited discovery, and ordered supplemental briefing.

_____

[5] As Aframax noted in its briefing, this is not Plaintiffs' first attempt to satisfy their arbitration awards against the Bergshav Group.  *See K Invs., Inc. v. B-Gas Ltd.*, No. 21-40642, 2022 WL 964210 (5th Cir. Mar. 30, 2022) (per curiam; unpublished opinion) (affirming district court's vacatur of attachment of the vessel M/T Bergitta where Plaintiffs failed to comply with Rule B because their complaint was not properly verified).

[6] The parties do not dispute that the *Berica* "was released from the [U.S. Marshals'] custody after only a day or so, with Sikousis agreeing to accept a letter of undertaking from Aframax's P&I Club as substitute security for the vessel."

Despite the opportunity for further discovery, Plaintiffs chose not to take depositions of any Bergshav Group representatives (including its directors and officers) or Bepalo's minority shareholder representatives. According to the district court, Plaintiffs "just briefly addressed the issue of Bepalo's independence in their supplemental brief."[7]

On January 19, 2023, the district court granted Aframax's motion to vacate. In its decision, the district court noted that, though Rule E(4)(f) provides that the plaintiff has the burden of demonstrating why attachment should not be vacated when attachment is challenged, the Ninth Circuit has not articulated the standard that applies to that issue. Relying on other district court decisions within this Circuit, the district court applied a probable cause standard, requiring Plaintiffs to demonstrate that they are reasonably likely to prevail on the merits of their veil-piercing claim.

On the merits, the district court ruled that Plaintiffs' alter ego claim of veil piercing failed at two essential points: (1) at the first link connecting Bepalo to the Bergshav Group; and (2) at the last link connecting Aframax to the alleged fraud. On the first point, the district court found that Plaintiffs failed to demonstrate that Bepalo was dominated and controlled by the Bergshav Group. To reach this conclusion, the district court relied on Bepalo's Shareholders' Agreement—which required the approval of a minority, non-Bergshav Group shareholder director for certain transactions, including the sale of vessels as occurred here—

---

[7] On appeal, Plaintiffs do not explain why they chose not to take depositions and maintain they "diligently pursued documentary discovery through interrogatories, requests for admissions and requests for production of documents."

and a declaration of Lorentzen, a minority shareholder and director of Bepalo who voted to approve the relevant transactions. The district court found that this evidence supported Aframax's position that Bepalo was sufficiently independent of the Bergshav Group such that Aframax, as a wholly owned subsidiary of the Bergshav Group, was not an alter ego of Bepalo. The district court also rejected Plaintiffs' single business enterprise theory of veil piercing because Plaintiffs did not argue Aframax was directly used for a fraudulent purpose. Plaintiffs timely appealed the district court's order, which vacated attachment of the *Berica*.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 688–89 (1950); *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1457–58 (9th Cir. 1989), *amended on other grounds*, 918 F.2d 1476 (9th Cir. 1990). We review an "order vacating [a] maritime attachment for abuse of discretion," and "review any legal conclusions underpinning the order de novo." *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010). A district court abuses its discretion if it failed to identify the correct legal standard or if its "application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985)).

## III. DISCUSSION

The district court did not abuse its discretion when it determined Plaintiffs failed to satisfy their burden of establishing a reasonable probability of success on their veil piercing theories. Plaintiffs failed to contradict Aframax's evidence that the Bergshav Group, Aframax's parent corporate group, did not dominate Bepalo. The transactions at issue required approval from at least one minority shareholder director of Bepalo, and one of those minority shareholders declared that he exercised his independent judgment in approving the transactions. Plaintiffs failed to provide evidence to the contrary. Consequently, we affirm the district court's decision.

### A. Pre-Judgment Attachment

As a preliminary matter, we address an unresolved issue raised by the district court: the standard that applies to determine whether to continue pre-judgment maritime attachments. "Under Rule B of the Supplemental Admiralty Rules, [a] plaintiff may attach a defendant's property if four conditions are met: (1) Plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Equatorial Marine*, 591 F.3d at 1210. Rule E(4)(f), titled "Procedure for Release From Arrest or Attachment," provides: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." A plaintiff indisputably has the burden of justifying

continued attachment under Rule E(4)(f).  *Equatorial Marine*, 591 F.3d at 1210.

We adopt the standard applied by the district court—probable cause to believe the plaintiff will prevail on the merits of its admiralty claim.  Several district courts within this Circuit have used this standard, other circuits have adopted a similar standard, and such a standard is consistent with the procedural posture of Rule E(4)(f) proceedings.

Though Rule E(4)(f) does not provide the standard by which to measure a plaintiff's burden, "the prevailing test [in this Circuit] appears to be a 'probable cause' standard that requires Plaintiffs to demonstrate the evidence shows a *fair or reasonable probability* that Plaintiffs will prevail on their alter-ego claim."  *OS Shipping Co. v. Glob. Mar. Tr. Priv. Ltd.*, No. 11-CV-377-BR, 2011 WL 1750449, at *5 (D. Or. May 6, 2011) (emphasis added); *see, e.g.*, *Benicia Harbor Corp. v. M/V IDA LOUISE*, No. 2:23-cv-00205-DJC-CKD, 2023 WL 7092230, at *2 (E.D. Cal. Oct. 26, 2023); *Kanaway Seafoods, Inc. v. Pac. Predator*, No. 3:22-cv-00027-JMK-KFR, 2022 WL 19569230, at *2 (D. Alaska July 29, 2022); *Sea Prestigio, LLC v. M/Y Triton*, No. 10cv2412-BTM (AJB), 2010 WL 5376255, at *1 (S.D. Cal. Dec. 22, 2010); *Del Mar Seafoods Inc. v. Cohen*, No. C 07-02952 WHA, 2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007).

The probable cause standard as articulated by district courts in this Circuit is consistent with other circuits.  Before the 1985 amendment to the Rule, the Fourth Circuit adopted the probable cause standard in the pre-judgment maritime attachment context, *see Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 912 (4th Cir. 1981), and it continues to apply the probable cause standard, *see Addax Energy SA v.*

*M/V Yasa H. Mulla*, 987 F.3d 80, 88 (4th Cir. 2021). After Rule E was amended in 1985, the Third Circuit described the applicable standard as "whether there were *reasonable grounds* for issuing the arrest warrant." *Salazar v. Atl. Sun*, 881 F.2d 73, 79 (3d Cir. 1989) (emphasis added).

The "probable cause" or "reasonable probability of success" standard is logical and consistent with Ninth Circuit precedent. In *Equatorial Marine*, the defendant purchased bunkers to fuel its ships from the plaintiff through an intermediary. 591 F.3d at 1209–10. When the intermediary became insolvent and failed to pay the plaintiff's bill, the plaintiff sued the defendant under theories of breach of contract and unjust enrichment and attached the defendant's ship. *Id.* at 1210. The defendant moved to vacate the attachment under Rule E(4)(f), and the district court granted the motion. *Id.* In affirming the district court's decision, we explained that a plaintiff is not "required to prove its case just to defeat the motion to vacate." *Id.* at 1211. But the plaintiff did have the "burden of showing that it had a *valid* prima facie . . . claim." *Id.* "Once [the defendant] came forward with evidence showing that it contracted with [the intermediary], not [the plaintiff], and paid [the intermediary] for the bunkers, [the plaintiff] needed to do something to contradict this showing. Because [the plaintiff] failed to do this, the district court properly vacated the attachment." *Id.*

As *Equatorial Marine* confirms, a plaintiff need not prove its case at the Rule E(4)(f) stage. A standard higher than probable cause, such as a preponderance standard, would tend to require just that. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) ("[T]his decision does not mean that Plaintiffs' allegations, if proven, are insufficient to prove mismanagement, breach of duty to investors, and misuse of corporate entities as to these other

corporate Defendants; rather, it means that the evidence provided to the district court is insufficient at this stage to demonstrate that Plaintiffs have the requisite prima facie admiralty claim . . . ." (internal quotation marks omitted)); *Salazar*, 881 F.2d at 79–80 ("The post-arrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond.").

For these reasons, we conclude that where a party challenges a plaintiff's Rule B attachment at a Rule E(4)(f) hearing, the plaintiff has the burden of establishing probable cause to continue attachment of the property. A plaintiff meets his burden by establishing a reasonable probability of success as to each element of his claim. A reasonable probability requires less than a preponderance but requires more than a mere possibility of success.[8] *Cf. Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (requiring more than a mere possibility of success on the merits and of irreparable injury to stay enforcement of a judgment). Where the defendant who requested the Rule E(4)(f) hearing provides evidence that undermines an essential element of a plaintiff's claim, the plaintiff then has the burden to submit evidence to the contrary or explain why the defendant's evidence is not material to survive a motion to vacate the attachment. *See Equatorial Marine*, 591 F.3d at 1211.

---

[8] Though this standard permits a significant range of probabilities within which a court could determine a plaintiff had shown a reasonable probability of success, the range of permissible outcomes gives district courts discretion, the exercise of which is reviewed for an abuse of that discretion. *See Equatorial Marine*, 591 F.3d at 1210.

Because we adopt the probable cause standard, the district court did not err in applying this standard below. *See Hinkson*, 585 F.3d at 1262.

## B.  Piercing the Corporate Veil

The district court did not abuse its discretion when it determined Plaintiffs had not met their burden of demonstrating probable cause to pierce Bepalo's corporate veil.  Plaintiffs failed to provide evidence to contradict record evidence that Bepalo was not dominated and controlled by the Bergshav Group, the owner of the attached *Berica*, which was necessary to pierce the corporate veil and hold any entity within the Bergshav Group liable for Bepalo's debts.[9]

Federal courts sitting in admiralty apply federal common law when examining corporate identity.  *See Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021).  The general rule is that a parent entity and its subsidiaries are separate entities.  *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003).  "To pierce the corporate veil, a party must show that (1) the controlling corporate entity exercises total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own, (2) injustice will result from recognizing the subservient entity as a separate entity, and (3) the controlling entity had a fraudulent intent or an intent to circumvent statutory or contractual obligations."  *Pac. Gulf Shipping*, 992 F.3d at 898 (cleaned

---

[9] Because we conclude Plaintiffs failed to show probable cause to pierce Bepalo's corporate veil, we need not consider the parties' arguments regarding the requisite degree of Aframax's involvement in the alleged fraud to justify continued attachment of the *Berica*.

up). The first element has also been described as requiring a "unity of interest" between the entities or that the subsidiary is a "mere instrumentality" of the parent. *See Harris Rutsky*, 328 F.3d at 1134–35. We have recently articulated the following non-exhaustive list of indicia courts use to determine to pierce the corporate veil:

> (1) disregarding corporate formalities such as, for example, in issuing stock, electing directors, or keeping corporate records; (2) capitalization that is inadequate to ensure that the business can meet its obligations; (3) putting funds into or taking them out of the corporation for personal, not corporate, purposes; (4) overlap in ownership, directors, officers, and personnel; (5) shared office space, address, or contact information; (6) lack of discretion by the allegedly subservient entity; (7) dealings not at arms-length between the related entities; (8) the holding out by one entity that it is responsible for the debts of another entity; and (9) the use of one entity's property by another entity as its own.

*Id.* The presence of these indicia is instructive, but not determinative of whether a court should pierce the corporate veil; instead, courts must look to the "totality of the record and circumstances" to determine whether the three elements of the test are satisfied: domination, injustice, and ill intent. *See id.*

Here, the district court properly applied this test and considered evidence Aframax provided demonstrating that

Bergshav Shipholding AS, Aframax's parent company, did not dominate Bepalo.

The record supports the district court's determination that Plaintiffs failed to establish the first element of total domination. Aframax filed a copy of Bepalo's Shareholders' Agreement between Bergshav Shipping Ltd., Lorentzens Skibs AS, and Pareto. The Agreement stated that all major decisions, including the sale of vessels, required approval of at least one of the two minority shareholder directors. Aframax also submitted a declaration of Nicolai Lorentzen, the minority shareholder and director who represented Lorentzens Skibs AS at all relevant times. His declaration confirmed that the Bergshav Group owned 51% of Bepalo, and that Lorentzens Skibs AS held 10% of Bepalo. Lorentzen also declared: "While the board was unanimous in its decisions [related to the relevant transactions], I can attest that I did not simply defer to the position of Atle Bergshaven or any other board member – I believe that each decision reached was appropriate based on my own evaluation of the facts." These facts support an inference that Bepalo was not totally dominated or controlled by the Bergshav Group because Lorentzen declared that he exercised independent judgment when he approved the transactions on behalf of a minority shareholder.

Despite the opportunity for discovery and to depose Bergshav Group representatives, Plaintiffs failed to provide evidence that contradicted Lorentzen's explanation that minority shareholders, who were not Bergshav Group representatives, exercised significant control over Bepalo's challenged transactions. Further, Plaintiffs failed to oppose Lorentzen's declaration or to make a legal argument that would undermine the relevance of these facts, and instead

made the conclusory assertion that "domination and control of [Bepalo] by the Bergshaven Group . . . [was] indisputable" without an evidentiary basis for such assertion.

Accordingly, the district court's determination that Plaintiffs failed to meet their burden of demonstrating a reasonable probability of success on their veil piercing theory was not illogical or implausible and was supported by facts in the record. *See Hinkson*, 585 F.3d at 1262.

On appeal, Plaintiffs misconstrue the district court's reasoning on this issue. Plaintiffs argue that the district court required them to show that Bergshav Group owned "100% of the shares" of Bepalo. That is incorrect. Nowhere did the district court require Plaintiffs to establish total ownership to prove total domination or that Bepalo and Aframax had a unity of interest. Plaintiffs also argue that Aframax did not provide evidence that the Shareholders' Agreement was followed or that it had binding effect after Bergshav Shipping Ltd. transferred its 51% share of Bepalo to B-Gas Holding Ltd. But it was Plaintiffs' burden to defend continued attachment as to such claims. And Plaintiffs do not argue they requested, and were denied, discovery on the validity of the Shareholders' Agreement, nor do they articulate a basis for believing their speculation would be supported by evidence had they attempted to discover it.

Further, Plaintiffs argue the district court excluded their factual showing of domination and control from its consideration. To this point, Plaintiffs essentially recount the series of transactions that the Bergshav Group undertook while restructuring. Plaintiffs argue they "did show in their submissions to the District Court a plan and design," spearheaded by Bergshav Shipholding AS, "to establish a new entity controlled by the shareholders of Bepalo (70% by

the Bergshaven Group) in order to preserve the equity of the shareholders" to Plaintiffs' detriment.  Accepting this point as true, Plaintiffs omit any mention of the minority shareholders—including Lorentzen, who declared that he exercised his independent judgment in representing Lorentzens Skibs AS when he voted to approve the relevant transactions.  Plaintiffs do not contend that they were denied the opportunity to depose Lorentzen.  They simply failed to respond to Lorentzen's declaration regarding his vote to approve the corporate restructuring, even though it refutes Plaintiffs' assertion that the Bergshav Group had "total domination" of Bepalo.  *See Pac. Gulf Shipping*, 992 F.3d at 898.

To be sure, the restructuring scheme at issue in this case may not have been "above board," as the district court noted.  But the Shareholders' Agreement and Lorentzen's declaration are record evidence that support inferences of Bepalo's independence from the Bergshav Group.  Thus, the district court did not abuse its discretion when it found Plaintiffs failed to meet their burden of demonstrating a reasonable probability that Bepalo was dominated and controlled by the Bergshav Group, as required to pierce the corporate veil on any theory under *Pacific Gulf Shipping*.**10** *See* 992 F.3d at 898; *Equatorial Marine*, 591 F.3d at 1211.

To hold any member of the Bergshav Group liable for Bepalo's debts, Plaintiffs needed to pierce Bepalo's

---

[10] Because we affirm the district court's finding that Bepalo was sufficiently independent of the Bergshav Group for purposes of piercing Bepalo's corporate veil, we need not discuss Plaintiffs' alternative "single business enterprise" theory, which Plaintiffs concede also requires a "unity of interest" and ownership between the debtor company and the company to be held liable.

corporate veil. Doing so required showing, at a minimum, that the Bergshav Group dominated and controlled Bepalo. Considering the record evidence before the district court, we conclude the district court did not abuse its discretion in finding Plaintiffs failed, at this preliminary stage of the litigation, on that threshold issue.

## IV.  CONCLUSION

For the above reasons, we affirm the district court's decision granting Aframax's motion to vacate attachment of the *Berica*.

**AFFIRMED.**

# APPENDIX

## TABLE I

### BERHSHAV GROUP STRUCTURE IN APRIL AND MAY 2020



**TABLE III**

**BERGHSHAV GROUP STRUCTURE THROUGH JULY 2020**

